IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3085 |
| | ) | |
| v. | ) | |
| | ) | FINDINGS AND |
| JESSE ANTILLON, | ) | RECOMMENDATION |
| | ) | |
| Defendants. | ) | |

INTRODUCTION

This matter is before the court on Jesse Antillon's Motion to Suppress "all evidence and any statements obtained as a result of Jesse Antillon's illegal detention and subsequent search of the vehicle in which he was riding on August 4, 2010." Filing No. 55. An evidentiary hearing was held on November 8, 2010. To the extent Jesse Antillon raises claims for suppression under the Fourth Amendment, the findings and recommendation to deny defendant's motion were stated on the record at the close of the evidentiary hearing. See filing no. 69, pp. 204-218. To the extent the Jesse Antillon's motion raises Fifth Amendment claims, the matter was taken under advisement to permit additional briefing by the defendant and research by the court. Accordingly, the findings and recommendation herein addresses only Jesse Antillon's Fifth Amendment claims.

The defendant claims the statements he made while in the custody of Arizona law enforcement officials must be suppressed. For the reasons set forth below, the motion should be denied.

FINDINGS OF FACT

On August 4, 2010, Jesse Antillon was a passenger in a red Ford Truck being driven in Yavapai County, Arizona by his brother Fabian Antillon-Estrada ("Antillon-Estrada"). The truck was stopped by Deputy Shane Weber of the Yavapai County Sheriff's Office on Interstate 17 for traveling 79 in a 75 mile-per-hour zone. When Deputy Weber approached the pickup, he observed Jesse Antillon sit up in the back seat. Antillon-Estrada informed Deputy Weber that he did not have a valid driver's license and was driving only because Jesse Antillon, who was lying down in the back seat, was tired.

Although Antillon-Estrada had been driving, Deputy Weber instructed Jesse Antillon to join him in his patrol vehicle. While checking Jesse Antillon's license, Deputy Weber questioned Jesse Antillon about his travel plans. Jesse Antillon stated that he and Antillon-Estrada were traveling to Kansas and had been in Phoenix, Arizona for 3 to 4 weeks completing roofing jobs. He stated he and Antillon-Estrada stayed at a Holiday Inn in Phoenix, but he had no receipts for the hotel stay.

After learning from dispatch that Jesse Antillon's driver's license was valid, Deputy Weber exited his patrol car, approached Antillon-Estrada, and asked him about the details of his trip. Antillon-Estrada stated they had been in the Phoenix area for 2 or 3 days and had stayed with a friend. He told Deputy Weber that he and Jesse Antillon were going to Nebraska.

Deputy Weber returned to his patrol car and sought permission from Jesse Antillon to search the pickup. Deputy Weber presented Jesse Antillon with a "consent to search" form that contained both English and Spanish versions. Jesse Antillon indicated he understood both Spanish and English. Deputy Weber asked Jesse Antillon to read the form.

Jesse Antillon did so and stated he understood Deputy Weber was requesting permission to search the vehicle, provided his verbal consent, and signed the "consent to search" form. Deputy Weber repeated the process with Antillon-Estrada and obtained his verbal and written permission to search the vehicle.

Deputy Weber summoned other deputies to the scene to watch Jesse Antillon and Antillon-Estrada while Deputy Weber searched the vehicle. Deputy Weber also retrieved his drug dog, Elliott, to complete a canine sniff. Elliott alerted to the odor of a illegal drugs. A vehicle search uncovered a substance later identified as methamphetamine. Jesse Antillon and Antillon-Estrada were arrested and advised of their Miranda rights, read by Deputy Weber to each of them from a card issued by the Yavapai County Sheriff's Department. Jesse Antillon acknowledged that he understood his rights. Deputy Weber asked Jesse Antillon if he would be willing to answer some questions, to which Jesse Antillon responded that he would. Deputy Weber asked if Jesse Antillon would like an attorney present during the questioning, and Jesse Antillon indicated that he did not want an attorney. Deputy Weber then asked Jesse Antillon if he would like to tell Deputy Weber anything about the drugs. Jesse Antillon responded by stating he knew nothing about drugs.

Jesse Antillon and Antillon-Estrada were transferred to the Camp Verde substation of the Yavapai County Sheriff's Department, approximately 15 minutes away from the site of the traffic stop where they were turned over to Deputy Jason Morgan, also of the Yavapai County Sheriff's Department. Deputy Morgan first attempted to interview Antillon-Estrada, but Antillon-Estrada refused to speak with him at that time. Deputy Morgan then removed Antillon-Estrada from the interview room and placed Jesse Antillon into the room to interrogate him. The room was approximately 6 feet by 10 feet. Deputy Morgan and Jesse Antillon were the only two individuals in the room initially and they were both seated. The questioning of Jesse Antillon occurred within a few minutes of his arrival at the substation.

Deputy Morgan informed Jesse Antillon he was trying to gather information and stated "the only way that the statements that [Jesse] made could hurt him is if he got on the stand to testify and then lied . . . during his testimony." Filing No. 69, p.166, lines 7-10. At some point in the interview, Deputy Morgan indicated to Jesse Antillon that Yavapai County was one of the "tougher counties, as far as charging when it [came] to methamphetamine." Filing No. 69, p. 167, lines 8-9. However, Deputy Morgan made no promises to Jesse Antillon or Antillon-Estrada about any pleas or reduction in charges because it "wouldn't be up to [him]." Filing No. 69, p. 167, line 15. Jesse Antillon answered Deputy Morgan's questions and made incriminating statements with regard to the narcotics found in the pickup truck. The entire interview took 20 to 30 minutes. During that time, Jesse Antillon did not invoke his right to counsel and never indicated that he no longer wanted to talk to Deputy Morgan. Antillon-Estrada was returned to the room and Deputy Morgan questioned them further together.

Jesse Antillon moved to suppress the evidence found in the pickup and the statements he made to Deputy Morgan. A hearing was held on the matter before the undersigned and a ruling was issued from the bench recommending that the motion to suppress be denied with regard to any Fourth Amendment claims, including suppression of evidence found in the pickup truck and any statements provided as fruit of the traffic stop, Jesse Antillon's detention, and the vehicle search. However, the parties were instructed to brief the issues surrounding the request to suppress the statements Jesse Antillon made to Deputy Morgan at the substation. Having done so, the court now addresses Jesse Antillon's Fifth Amendment claims to suppress the statements made during the interrogation at the substation.

4

ANALYSIS

To determine whether Jesse Antillon's statements should be suppressed, the court must determine: 1) if Jesse Antillon waived his Miranda rights; 2) whether Deputy Morgan's assurance--that any statement made by Jesse Antillon would be used only if he lied on the witness stand--is binding on the United States; and 3) whether, under the totality of circumstances presented, the confession was voluntary.

1) **Waiver of Miranda Rights.**

Law enforcement officers are required to warn criminal suspects of their constitutional rights to counsel and against self-incrimination before performing custodial interrogation. Miranda v. Arizona, 384 U.S. 346, 467-70 (1966).

> Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 475, 86 S.Ct. 1602. The inquiry has two distinct dimensions. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009)(internal citation omitted). The determination of whether a defendant has knowingly and voluntarily waived his Miranda

rights is "an extremely fact sensitive analysis." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010) (citing United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999)).

In this case, Deputy Weber advised Jesse Antillon of his Miranda rights. Deputy Weber read the Miranda warnings directly off of his agency-approved card. Jesse Antillon orally communicated he understood the rights and consented to answering questions. He had no difficulty understanding or communicating in English, and Deputy Weber did not employ any coercive tactics in an attempt to induce Jesse Antillon's Miranda waiver. Jesse Antillon was alert and did not appear to be under the influence of drugs or alcohol, and once the questioning began, responded appropriately. Jesse Antillon did not invoke his right to remain silent at any time, or revoke his waiver of Miranda rights.

Based on the facts and circumstances of this case, Jesse Antillon voluntarily, knowingly and intelligently waived his Miranda rights. See United States v. Marquez, 605 F.3d 604, 609 (8th Cir. 2010)(finding a waiver where the suspect was questioned in English, responded in English and orally consented to an interview); United States v. Gaddy, 532 F.3d 783, 788-89 (8th Cir. 2008)(finding a valid waiver where law enforcement officers credibly testified that the defendant was not under the influence of alcohol or drugs and appeared alert and calm).

### 2) **Deputy Morgan's Representations.**

During questioning at the substation, Deputy Morgan told Jesse Antillon that his statements would not be used against him unless he testified at trial and his testimony contradicted the statements made during interrogation; in other words, that Jesse Antillon's statements would not be used against him during the government's case-in-chief. This court

must determine whether that assurance, made by a Yavapai County Sheriff's deputy, is binding on the United States in this federal prosecution.

Generally speaking, the government is not bound by the unauthorized promises of its law enforcement officers or other parties not privy to the agreement. See United States v. Hudson, 609 F.2d 1326, 1328 (9th Cir. 1979). For instance, in the context of a plea bargain, the federal government cannot be bound by a state prosecutor's promise that a defendant will not be prosecuted in federal court. See United States v. McIntosh, 612 F.2d 835, 838 (4th Cir. 1979) (finding the state prosecutor was not vested with authority to settle criminal liabilities); see also Hendrix v. Norris, 81 F.3d 805, 807 (8th Cir. 1996)(finding state prosecutors cannot bind federal prosecutors without the "knowledge and consent" of the federal prosecutor). As stated in United States v. Barker, 542 F.2d 479, 482 (8th Cir. 1976):

> The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who allegedly has committed an offense against its peace and dignity. When its own evidence and investigation discloses acts of criminal activity, an undeniable right to prosecute exists. This right cannot be controlled, thwarted, or diminished by another sovereign granting immunity from prosecution of a kindred offense.

Barker, 542 F.2d at 482-83.

Deputy Morgan, an employee of the Yavapai County, Arizona County Sheriff's Office, is not an agent of the United States government. Thus, he had no ability to bind or limit the prosecution efforts of the United States by representing that Jesse Antillon's statements would not be used against him.

### 3)      **Voluntariness of the Confession**

Jesse Antillon argues that any statements made to Deputy Morgan should be suppressed because they were the result of coercion. Specifically, Jesse Antillon asserts his reliance on Deputy Morgan's representation rendered the confession involuntary.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001). The determination of voluntariness is made based on the totality of the circumstances, taking into account the "conduct of the officers and the characteristics of the accused." Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). The fact that a defendant received Miranda warnings weighs in favor of voluntariness. See United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996). The United States has the burden of proving the challenged statements were voluntary by a preponderance of the evidence. United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (internal citations omitted).

In LeBrun, a man was suspected of committing a murder while in the Navy. The law enforcement officers requested that LeBrun accompany them to the Missouri Highway Patrol office. LeBrun was told he was not under arrest and could terminate the interview at anytime. LeBrun was not read his Miranda rights at anytime before or during the interview, but later testified he was aware of his rights under Miranda. He was taken to an interview room and questioned extensively about the murder. The questioning involved "psychological ploys" including representations that officers had "significant" evidence linking LeBrun to the murder and a protracted trial would "drain his financial resources and would ruin his family's reputation." LeBrun, 363 F.3d at 718. The agents also stated that

if the killing was spontaneous, LeBrun would not be prosecuted. After thirty minutes of questioning, LeBrun confessed to strangling the victim.

LeBrun sought to have his confession suppressed because, he argued, the statements were the result of coercion and were therefore involuntarily made. The district court agreed and suppressed the confession. The Eight Circuit disagreed. In discussing the agents' false representation that no charges would be filed if LeBrun admitted that the killing was spontaneous, LeBrun held:

> Even assuming that a reasonable person would view the Agents' statements as a promise, a promise made by law enforcement "does not render a confession involuntary per se." Simmons, 235 F.3d at 1133; see also Tippitt v. Lockhart, 859 F.2d 595, 598 (8th Cir.1988) (concluding that defendant's confession was voluntary despite officers' promise), cert. denied, 490 U.S. 1100, 109 S.Ct. 2452, 104 L.Ed.2d 1007 (1989). A promise is merely one factor in the totality of the circumstances. See Simmons, 235 F.3d at 1133 (stating that a promise made by law enforcement is only one relevant consideration). Whatever the facts of an individual case, our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination. Thus, it is not enough to show that the authorities' representations were the but-for cause of a confession. See Schneckloth v. Bustamonte, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (concluding that a but-for type analysis is inadequate because "[u]nder such a test, virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind"). Therefore, even assuming that the agents' statements could be construed as a promise and that the statements induced LeBrun's confession, our inquiry remains the same: whether the facts surrounding this interview demonstrate that the authorities overbore LeBrun's will and capacity for self-determination. This is a very demanding standard, and we are of the view that the facts of this case do not rise to that level.

LeBrun, 363 F.3d at 725-26.

The court placed significant weight on the fact that LeBrun confessed after only thirty minutes of questioning. Thus, it was "not a situation where the officers wore down [the] defendant's will with persistent questioning over a considerable length of time." LeBrun, 363 F.3d at 726. The court further relied on the fact that LeBrun, despite receiving no Miranda warnings from the officers, admitted to having a subjective understanding of his Miranda rights. The court noted LeBrun possessed at least average, if not above average, intelligence, had some experience with the legal system, and "did not display any unique sensitivity that would indicate agents might overbear his will." LeBrun, 363 F.3d at 726.

Likewise, Smith v. Bowersox, 311 F.3d 915 (8th Cir. 2002), addressed whether a statement by a law enforcement officer that the defendant would not "get the chair" if he confessed was sufficiently coercive to render a subsequent confession involuntary. Although the court noted such a misrepresentation was improper, it gave significant deference to the findings of the Missouri state courts that the defendant "was alert, did not appear under the influence of drugs," and actively avoided trying to taking responsibility for the murder. Bowersox, 311 F.3d at 923. Thus, it ruled the state's determination that the confession was voluntary was not contrary to established Supreme Court law.[1]

In United States v. Aguilar, 384 F.3d 520 (8th Cir. 2004), the Eighth Circuit revisited the impact of false promises in determining whether a confession is voluntary. In Aguilar, a suspect was brought in for questioning regarding a drug transaction. Prior to receiving Miranda warnings, he was questioned for ninety minutes in an unrecorded session. During the initial questioning, the police promised Aguilar they would release him that day if he cooperated. During the questioning one of the officers also became angry, kicked a desk

---

[1] Bowersox was a habeas corpus action, where the Eighth Circuit was required to determine whether the state court's legal rulings contradicted or unreasonably applied clearly established Supreme Court law.

and swore at Aguilar. Id. at 522. Aguilar was then given his Miranda warnings and subjected to a recorded questioning for twenty minutes, during which Aguilar confessed to having a role in a drug conspiracy. Aguilar moved to suppress all statements he made to the law enforcement officers.

The court determined that Aguilar's statements should be suppressed. Aguilar, 384 F.3d at 526. The court distinguished Aguilar from LeBrun in that Aguilar was under arrest and was not free to leave the police station, was subjected to two hours of questioning, much of which occurred prior to receiving Miranda warnings, and did not possess any experience with the judicial system. Aguilar, 384 F.3d at 527. The Aguilar court also relied heavily on the fact that the law enforcement officers used a two-step, "question-first" interrogation technique, which is subject to "strict scrutiny" in terms of its impact on the defendant. Aguilar, 384 F.3d at 527. While acknowledging the promise of immediate release was one factor to consider in determining if the defendant's confession was voluntary, based on the totality of the circumstances, Aguilar held the defendant's statements should be suppressed. Aguilar, 384 F.3d at 527. See also, United States v. Lall, 607 F.3d 1277 (11th Cir. 2010) (holding the confession of an uncounseled twenty-year old, made in response to an officer's promise that no charges would be pursued, was involuntary and inadmissible in a federal prosecution; explaining an interrogating officer's misrepresentations regarding the legal implications of a defendant's confession were more likely to "render a suspect's confession involuntary" because a promise not to prosecute "may be the most significant factor in assessing the voluntariness of an accused's confession in light of the totality of the circumstances."); Hopkins v. Cockrell, 325 F.3d 579, 584 (5th Cir. 2003) (holding that law enforcement officer's lie that a conversation with the defendant was confidential contributed to a finding of an involuntary confession); United States v. Walton, 10 F.3d 1024, 1030 (3d Cir.1993) (finding law enforcement officer's assurance that any statements made to him by the suspect were "off the record" rendered confession involuntary because the statements

11

were inconsistent with Miranda warnings administered the previous day); United States v. Rutledge, 900 F.2d 1127, 1130 (7th Cir. 1990) (in dicta noting that if an officer tells a suspect any statements will not be used against him, with the full intention of using the statements, "he would have a strong argument that any ensuing confession had been extracted through fraud and was involuntary"); Streetman v. Lynaugh, 812 F.2d 950, 957 (5th Cir. 1987) (promise that statement will not be used against an accused is so attractive that it may render the resulting statement involuntary).

As evidenced by the previously cited case law, the question of whether Deputy Morgan's false promise rendered Jesse Antillon's statement involuntary presents a close question. However, based on the totality of facts and the controlling Eighth Circuit law, the motion to suppress should be denied.

Deputy Morgan did not state no charges would be pursued if Jesse Antillon provided a statement; he promised only that any statements provided would not be used unless Jesse Antillon testified differently at trial. Although Jesse Antillon was under arrest and in police custody when questioned at the substation, he was not subject to any coercive mental or physical interrogation techniques. Cf. LeBrun, 363 F.3d at 725-26 (refusing to suppress the defendant's statements even though he was exposed to coercive techniques and was assured he would not be prosecuted if he confessed to a "spontaneous" killing). The questioning occurred in two relatively short interrogation sessions; the first lasting only a few minutes at the scene of the traffic stop, and the second lasting only twenty to thirty minutes at the substation. Jesse Antillon confessed fairly soon after the interrogation began, distinguishing this case from the lengthy questioning used in Aguilar and Hopkins. Jesse Antillon was alert and conversational during the interview with Deputy Morgan, and showed no signs of mental or physical impairment which would call his competency or free will into question. See, e.g., Bowersox, 311 F.3d at 923 (relying on the Missouri state court's finding that the

defendant was alert and competent at the time he confessed). Jesse Antillon was interrogated by a single officer at the substation, and was not exposed to pressure from multiple law enforcement officers. Unlike the defendant in Aguilar, he was not subjected to the two-stage, question-first method of interrogation for which "strict scrutiny" is warranted, (Aguilar, 384 F.3d at 527), and he received and waived his Miranda rights before any questioning began. Mendoza, 85 F.3d at 1350 (holding administration of Miranda warnings weighs in favor of a voluntariness finding). When the interrogation occurred, Jesse Antillon was well aware he was subject to a criminal investigation; he had been arrested and was in custody. Cf. Lall, 607 F.3d at 1287 (noting the defendant was unaware he was personally being investigated); Walton, 10 F.3d at 30 (noting the defendant believed the investigation was regulatory in nature and not criminal).

Applying Eighth Circuit law, a promise by itself does not render a confession involuntary, but is only one factor to consider in the totality of the circumstances test. See LeBrun, 363 F.3d at 725-26; see also United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995) (finding a promise of leniency by itself does not make a statement involuntary); see also United States v. Otters, 197 F.3d 316, 317-18 (8th Cir. 1999) (promise that no state charges would be filed was not enough by itself to render statements involuntary). While the representation by Deputy Morgan was inaccurate and perhaps deceitful, the officer made no promise of non-prosecution and did not affirmatively represent he could bind the federal prosecutors. Under the totality of the circumstances, Deputy Morgan's promise was not sufficient to overbear the defendant's will or critically impair his capacity for self-determination. LeBrun, 363 F.3d at 725-26. Jesse Antillon's statements were not coerced and were knowingly and voluntarily provided to law enforcement.

Accordingly, for the reasons set forth on the record at the close of the evidentiary hearing, (filing no. 69, pp. 204-218), and set forth in this written recommendation,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by Jesse Antillon (filing no. 55) be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

DATED this 23rd day of December, 2010.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.